IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAROUNA NDIAYE, | ) | CASE NO. 4:19CV712 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| REBECCA ADDUCCI, | ) | |
| | ) | **REPORT AND RECOMMENDA-** |
| Respondent. | ) | **TION RE RESPONDENT REBECCA** |
| | ) | **ADDUCCI'S MOTION TO DISMISS** |
| | ) | **HABEAS CORPUS PETITION** |

**I.**

On April 1, 2019, Harouna Ndiaye sought release from the Northeast Ohio Cor-

rectional Center by filing a habeas corpus petition under 28 U.S.C. § 2241.[1]  United

States Immigration and Customs Enforcement officials were holding Ndiaye pending

his removal to Mauritania[2] or, in the alternative, Senegal.[3]  On June 12, 2019, respon-

dent Rebecca Adducci moved to dismiss the petition pursuant to Fed. R. Civ. P.

12(b)(1) for lack of subject matter jurisdiction.[4]  Two days earlier, ICE had released

---

[1] ECF #1.

[2] The official name of the country is the Islamic Republic of Mauritania, which is located
on the northwest coast of Africa and has a population of about 4 million inhabitants.
https://www.britannica.com/place/Mauritania (last accessed on 2/24/20).

[3] ECF #1-1.  Senegal and Mali border Mauritania on the south.

[4] ECF #4.

Ndiaye from jail subject to the terms and conditions of an order of supervision.[5]

Although his petition does not mention them, Ndiaye argues in opposition to Adducci's motion that the terms and conditions of his supervised release constitute being "in custody" for purposes of habeas corpus relief.[6] In reply, Adducci explains that ICE released Ndiaye under the statutorily-required standard terms and conditions the Department of Homeland Security uses when releasing someone subject to a deportation order, which "are not amenable to judicial discretion."[7]

On May 14, 2019, the District Court referred this case to me for a report and recommended decision pursuant to Local Rule 72.2. Because Ndiaye is no longer in custody and because the terms and conditions under which he is supervised do not constitute custody, I recommend that the government's motion to dismiss Ndiaye's petition be granted.

## II.

***Ndiaye's presence in the United States.*** Ndiaye has been in the United States since December 15, 1996.[8] On August 27, 1999, an immigration judge denied his application for asylum, and ordered him to be deported.[9] Ndiaye's efforts to obtain relief on appeal failed.[10] Nevertheless, the federal government allowed him to remain in the United States

---

[5] ECF #4-1.
[6] ECF #5.
[7] ECF #6, at 1.
[8] ECF #1, at 1; ECF #1-3.
[9] ECF #1-2.
[10] ECF #1-3.

subject to ICE supervision.[11]

That changed on August 8, 2018 when ICE officials detained Ndiaye while he was at a check-in appointment with an ICE officer in Columbus, Ohio.[12]  ICE held him in three different jails: first at the Butler County Jail in Hamilton, Ohio, then at the Morrow County Jail in Mt. Gilead, Ohio, and lastly at NEOCC in Youngstown, Ohio.[13]  On February 19, 2019, ICE notified Ndiaye that he would remain in federal custody until he was removed from the United States.  ICE advised him as follows:

> You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to affect your removal.  You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).[14]

***Ndiaye's Efforts to Obtain Habeas Relief.***  Roughly a month and a half after this notification, Ndiaye filed his pro se petition under 28 U.S.C. § 2241.  According to Ndiaye, his ongoing detention violated statutory and regulatory restrictions governing the length of his detention, constituted substantive due process violations because, in his mind, "[t]here is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future,"[15] and denied him procedural due process because he has been denied "a timely and

---

[11] ECF #1, at 2.
[12] ECF #1-1.
[13] ECF #1, at 2.
[14] ECF #1-3.
[15] ECF #1, at 7.

3

meaningful opportunity to demonstrate that he should not be detained."[16]

Things again changed for Ndiaye.  On June 10, 2019, ICE released him from jail.[17] His release was subject to an order of supervision apparently not unlike the order of supervision he was under prior to his arrest.

For example, the form order requires Ndiaye to appear in person at a specified time and place "upon each and every request of the agency" for deportation or removal; to appear for medical or psychiatric examination at the government's expense; to provide certain personal information about nationality, circumstances, habits, associations, activities, and "such other information as the agency considers appropriate"; to limit his travel subject to ICE approval; to provide any change of residence or employment; and to assist ICE in obtaining any necessary travel documents.[18]

Ndiaye is also subject to conditions in an addendum to the order of supervision that prohibit him from associating with known gang members or criminal associates, or from associating with such activity; prohibit him from committing crime; and require him to provide ICE with copies of his requests to Mauritania's embassy or consulate requesting the issuance of a travel document and any responses to those request.[19]  Two additional checked boxes on the form order alert Ndiaye that any violation of these conditions "will result in revocation of your employment authorization document" and "may result in you

---

[16] *Id*. at 8.
[17] ECF #4-1.
[18] ECF #5-1, at 5.
[19] *Id*. at 7.

being taken into Service custody and you being criminally prosecuted."[20]

An additional sheet captioned "WARNING FOR FAILURE TO COMPLY WITH TERMS OF SUPERVISED RELEASE" repeats the statutory authority by which ICE can punish someone subject to its supervision, the relevant warnings, and the statutory language of 8 U.S.C. § 1231(a)(3) that gives the Attorney General authority to supervise aliens who are subject to deportation and removal but who are not presently in custody and remain in the United States.[21] Ndiaye acknowledged receipt of these terms and conditions on June 10, 2019 by way of his signature on these sheets.[22]

Ndiaye's real complaint zeroes in on a smartphone app known in the marketplace as BI SmartLINK®.[23] ICE has aliens use this app to check in remotely with their supervising officer. The app alerts the user about once a week to check in by submitting a photo via the app. Ndiaye understood that he has about one hour to comply with the alert or risk being detained again by ICE. Unanticipated spotty cellphone connectivity, the need to have his cellphone always on, and the relative randomness of the alerts now have Ndiaye on pins and needles.[24]

Notwithstanding these drawbacks with smartphone technology, Ndiaye declares that he has "always complied with ICE's requests and demands, and [] will continue to do

---

[20] *Id*.
[21] *Id*. at 8.
[22] *Id*. at 5, 7, 8.
[23] *Id*. at 9. *See* http://reliantmonitoring.com/work/bi-smartlink/, http://reliantmonitor-ing.com/wp-content/uploads/SmartLINK_specsheet.pdf, and https://bi.com/products-and-services/smartlink-offender-monitoring-mobile-application-software/ (last accessed on 2/24/20).
[24] *Id*. at 2.

so."[25]  The record before me suggests as much.  The personal report record from supervision prior to his detention shows compliance with in-person reporting every three months and then annually, indicating a growing trust between him and his supervising officer.[26]  Nothing in the record suggests a lesser level of compliance now that Ndiaye is again on supervision.

### III.

*Satisfying the "in custody" requirement and Article III.*  Adducci seeks to dismiss the petition because Ndiaye is no longer in custody.  This in turn, according to Adducci, means the District Court no longer has subject matter jurisdiction to hear the petition.  Fed. R. Civ. P. 12(b)(1) provides in relevant part:

> **(b) How to Present Defenses.**  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:

>> **(1)** lack of subject-matter jurisdiction.

Adducci's argument derives from Article III, § 2 of the Constitution, which extends judicial power to cases and controversies.  With Ndiaye out of jail, Ndiaye's petition no longer presents a case or controversy, according to Adducci.[27]

Relief under 28 U.S.C. § 2241 requires the petitioner to be "in custody."  "The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty.  Since habeas corpus is an

---

[25] *Id*. at 3.
[26] *Id*. at 10.
[27] ECF #4, at 2.

extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate."[28]

Ndiaye was in jail when he filed his petition, but not when Adducci filed her motion to dismiss.  This sequence of events satisfies the requirement that Ndiaye be in custody when he filed his petition.[29]  His subsequent release from jail, however, supports Adducci's motion to dismiss.

This conclusion aligns for the most part with the law in *Spencer v. Kemna*,[30] which both parties cite.  In *Spencer*, the Supreme Court decided a case involving 28 U.S.C. § 2254, but the same law and logic apply to 28 U.S.C. § 2241.  Both require the petitioner to be "in custody."[31]  *Spencer* involved an individual whose parole revocation resulted in incarceration.  He was in custody when he filed his petition, but had been released by the time the lower court adjudicated his petition.[32]  The Supreme Court focused on points both parties make in their briefing.

> The more substantial question, however, is whether petitioner's sub-sequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, § 2, of the Constitution.  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate....  The parties must continue to have a 'personal stake in the outcome' of the

---

[28] *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cty., California*, 411 U.S. 345, 351 (1973).

[29] *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citations omitted).

[30] *Spencer*, 523 U.S. 1.

[31] *Compare* 28 U.S.C. §§ 2254(a) and (b)(1), *with* 28 U.S.C. §§ 2241(c)(1)-(4).

[32] *Spencer*, 523 U.S. at 7.

lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 … (1990). See *also Preiser v. Newkirk*, 422 U.S. 395, 401… (1975). This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis*, *supra*, at 477 ….

An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction. Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained. See, *e.g.*, *Carafas* [*v. LaVallee*, 391 U.S. 234] … at 237–238 …. In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur). See *Sibron v. New York*, 392 U.S. 40, 55–56 … (1968).[33]

The petitioner in *Spencer* challenged solely what he believed was the wrongful termination of his parole status. Incarceration would constitute injury in fact, but release does away with that injury. The Supreme Court made no presumption as to whether collateral consequences from the parole revocation constituted an injury in fact to satisfy the case-or-controversy requirement. It left it up to the petitioner to prove that.[34] In the end, the Court rejected the petitioner's four asserted injuries. The expiration of the petitioner's sentence rendered the petition moot, which no longer presented a case or controversy to satisfy Article III.[35]

---

[33] *Id.* at 7-8.
[34] *Id*. at 14.
[35] *Id*. at 14-18.

8

As in *Spencer*, Ndiaye's incarceration would have constituted a concrete injury.  He is no longer incarcerated, however, and alleges no collateral consequences in his petition (nor can any be presumed).  Ndiaye's petition no longer presents a case or controversy to meet Article III's requirement.[36]  Therefore, his claims are moot.[37]

**Satisfying the "in custody" requirement and Article III without jail.**  The analysis does not end here, particularly since Ndiaye has the burden of proving jurisdiction to survive Adducci's motion to dismiss.[38]  Release from jail forced Ndiaye to change his approach in opposing the motion to dismiss.  Instead of his incarceration, he now points to the terms and conditions of his supervision, which, in his view, are as onerous on his liberty as being in jail.[39]

At first glance, opinions Ndiaye cites from both the Supreme Court and the Sixth Circuit would seem to weigh in his favor.  "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty,

---

[36] *See Conteh v. Barr*, slip op., No. 4:18CV1357, 2019 WL 1440870 (N.D. Ohio Apr. 1, 2019) (finding petitioner's deportation rendered his claim for release from detention moot) (citing *Enazeh v. Davis*, 107 F. App'x 489, 491 (6th Cir. 2004)).

[37] *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) (holding that a case is moot when the issues presented are no longer "live," when the parties lack a legally cognizable interest in the outcome, or when events occur during the pendency of the litigation that render the court unable to grant the requested relief) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969), *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 514 (1911), and 6A J. Moore, J. Lucas & G. Grotheer, MOORE'S FED. PRACTICE ¶ 57.13, at 57-123 to 57-127 and n.11 (1986)).

[38] *See*, *e.g.*, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citation omitted); *Lacey v. Gonzales*, 499 F.3d 514, 518 (6th Cir. 2007) (citing *GTE N., Inc. v. Strand*, 209 F.3d 909, 915 (6th Cir. 2000)).  *See also Hautzenroeder v. DeWine*, 887 F.3d 737, 740 (6th Cir. 2018) (citing *Brott v. United States*, 858 F.3d 425, 428 (6th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 1324 (2018)).

[39] ECF #5, at 2-3.

restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus."[40]  The Supreme Court has taken note of the use of habeas relief for aliens in particular.  "[I]n the United States the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody.  This Court itself has repeatedly held that habeas corpus is available to an alien seeking entry into the United States, although in those cases each alien was free to go anywhere else in the world."[41]

A similar tone was struck in *Rosales-Garcia v. Holland*[42] where the Sixth Circuit found a habeas claim was not moot even though the petitioner had been released from INS detention.  "Our inquiry into whether Rosales's claim is moot cannot end, however, with a determination of custody.  In *Spencer v. Kemna*, the Supreme Court determined that a petitioner's release did not by itself moot his habeas petition, but the Court then explained that '[t]he more substantial question … is whether petitioner's subsequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, § 2, of the Constitution.' "[43]  The Court of Appeals went on to reverse the District Court's denial of the habeas petition brought by Cuban citizens.

Ndiaye's effort to show subject matter jurisdiction in this case fails from the start.  First of all, his petition does not challenge the terms and conditions of his supervision.  No

---

[40] *Jones v. Cunningham*, 371 U.S. 236, 240 (1963) (reversing dismissal of the petition as moot and instead permitting petitioner to add parole board members as respondents).
[41] *Id*. at 239 (footnotes omitted).
[42] *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) (en banc).
[43] *Id*. at 395 (quoting *Spencer*, 523 U.S. at 7).

one could fault him for this omission, since ICE imposed on him the current terms and conditions following his release from NEOCC—after he had filed his petition. But Ndiaye neither sought to amend his petition to complain about the present terms and conditions of his supervision nor did he ever complain about the terms and conditions of his past supervision when he had a chance to do so. The petition's spotlight is on Ndiaye's time spent in jail. It says nothing about any supervision, whether past, present, or future. I cannot recommend relief that would require me to amend the petition sua sponte, especially in such a significant way.

Ndiaye attempts to deal with this problem by pointing to his prayer for relief where he asks for "preliminary and permanent injunctive relief enjoining Respondent from further unlawful detention of Petitioner."[44] To say that this language includes a challenge to the terms and conditions of Ndiaye's post-release supervision is to stretch it well beyond its breaking point. This argument also fails in light of the Sixth Circuit's holding earlier this year that the relief authorized under 28 U.S.C. § 2241 does not include preliminary injunctions. "Section 2241 does not permit preliminary grants of habeas. It prohibits the writ from issuing unless the prisoner 'is' being held 'in custody in violation of the Constitution or laws or treaties of the United States,' not merely because he likely could make that showing in the future. *Id*. § 2241(c)(3). Whether as a matter of form, substance, or procedure, this was a preliminary injunction, not a grant of the writ of habeas corpus."[45]

---

[44] ECF #1, at 8.
[45] *Hamama v. Adducci*, 946 F.3d 875, 877-78 (6th Cir. 2020).

Ndiaye's position fails to take into account both the facts and the analysis underlying the Supreme Court's opinion in *Spencer*. There, the Court rejected the notion that collateral consequences are presumed to cause injury sufficient to meet Article III's case-or-controversy requirement. The petitioner lost because he could not show injury.[46]

*Rosales-Garcia* doesn't help Ndiaye either. There, the Sixth Circuit highlighted the arbitrariness by which the petitioners could be taken into custody. "Although Rosales is not currently being detained, his immigration parole can be revoked by the INS at any time for almost any reason. Unlike parole granted following incarceration for a criminal conviction, Rosales need not do anything for the INS to revoke his parole; for instance, the INS can revoke Rosales's parole if it deems such revocation to be 'in the public interest.' "[47] That's not the situation here. Ndiaye, not ICE, decides whether to engage in certain conduct that can send him back to jail.[48] Ndiaye's speculation about ICE taking him back into custody in the future is just that—which both the Supreme Court[49] and the Sixth Circuit[50] have rejected in habeas cases.

Ndiaye's purported injury here is the inconvenience of needing to be on the other end of a mobile app used to monitor him periodically. The ubiquity of smartphones suggests that vast numbers of our fellow citizens voluntarily have their smartphones by their side 24/7. Although some may view that as an addiction of sorts, most accept around-

---

[46] *Spencer*, 523 U.S. at 14-16.
[47] *Rosales-Garcia*, 322 F.3d at 395-96 (footnote and citation omitted).
[48] ECF #5-1, at 5, 7, 8.
[49] *Spencer*, 523 U.S. at 16-18.
[50] *Hamama*, 946 F.3d at 877.

the-clock smartphone connectivity with the rest of the world as a positive 21st century advancement.  As the Supreme Court has observed, cellphones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy."[51]  Even with inevitable disruptions and inconveniences smartphone connectivity brings all of us (*e.g.*, robocalls, spam emails, unidentified texters, hackers), few would consider it an injury.  And certainly not the kind of injury warranting exercise of the extraordinary judicial power the Great Writ gives federal judges.

I have no reason to disbelieve Ndiaye, who indicates in his petition and in his opposition brief that he will comply with ICE's supervisory instructions.[52]  ICE's terms and conditions for his supervised release fall within the parameters of 8 U.S.C. § 1231(a)(3).  That statutory provision states:

> (3)     **Supervision after 90-day period** — If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.  The regulations shall include provisions requiring the alien—
>
>     (A)     to appear before an immigration officer periodically for identification;
>
>     (B)     to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>
>     (C)     to give information under oath about the alien's nationality, circumstances, habits, associations, and

---

[51] *Riley v. California*, 573 U.S. 373, 385 (2014) (Roberts, C.J.).
[52] ECF #1, at 5; ECF #5, at 7, 9; ECF #5-1, at 3.

> (D)     activities, and other information the Attorney General considers appropriate; and
>
> (D)     to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

Ndiaye no doubt feels constrained to some degree by the terms and conditions of his supervised release. As applied to aliens like him who are permitted to remain in this country despite a pending deportation order, that restraint is by design. The terms and conditions do not "significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do."[53] Nor do they constitute "severe restraints on individual liberty."[54] The Sixth Circuit has rejected arguments like Ndiaye's when addressing petitioners' complaints about being required to reside in California for four years as a condition of parole[55] or being required to comply with Ohio's Tier III sex offender registration (and all that it entails) for a lifetime.[56] By comparison, the restraints in these cases are far more onerous than those governing Ndiaye's supervised release.

Ndiaye has chosen the wrong type of pleading to challenge terms and conditions of alien supervision promulgated under 8 U.S.C. § 1231. The relief permitted under 28 U.S.C. § 2241 is release from custody, not a judgment declaring the terms and conditions of that

---

[53] *Jones*, 371 U.S. at 243.
[54] *Hensley*, 411 U.S. at 351 (holding petitioner was in custody even though remaining at large, and noting that petitioner's "incarceration is not … a speculative possibility that depends on a number of contingencies over which he has no control").
[55] *Factor v. Fox*, 175 F.2d 626, 629 (6th Cir. 1949).
[56] *Hautzenroeder*, 887 F.3d at 744 (holding that statutorily mandated obligations are not custodial).

release to be null and void.[57]  Technical snafus will undoubtedly occur along the way as governmental agencies like ICE use smartphone technology to keep better track of persons under their supervision.  We all know that cellphone connectivity can drop off even in areas pockmarked with cellphone towers.  Things will get even trickier as we transition to 5G capabilities when some cellular applications could require continual connectivity. Software developers are smart, and ICE officers are practical.  Together they will figure how to get around some of the problems we can only speculate about now.

In a last-ditch effort to save his petition, Ndiaye tries to package these concerns as an exception to the mootness doctrine for cases "capable of repetition, yet evading review."[58]  The Supreme Court in *Spencer*, however, reminded courts that this exception to the mootness doctrine " 'applies only in exceptional situations.' "[59]  Similar to the petitioner there, Ndiaye has not shown that the time between revocation of his supervised release and the end of any future detention would be so short as to evade review.  Nor has he shown a reasonable likelihood that he will be subject to detention again.  This, too, "is purely a matter of speculation,"[60] and not the proper subject matter for habeas relief.

---

[57] *See Cohen v. United States*, 593 F.2d 766, 770-71 (6th Cir. 1979) (holding that relief under 28 U.S.C. § 2255 which is designed to permit a prisoner to attack alleged impropriety in the sentence as imposed upon him is distinguishable from relief under 28 U.S.C. § 2241 which is designed to permit a prisoner to attack the execution of the sentence).
[58] ECF #5, at 9.
[59] *Spencer*, 523 U.S. at 17 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).
[60] *Id*. at 16 (commenting on petitioner's claim that the finding of a parole violation could be used to impeach him or used against him directly should he appear as a witness or litigant in a future criminal or civil proceeding).

## IV.

Ndiaye used a petition under 28 U.S.C. § 2241 to force ICE to release him from jail while he awaits deportation.  Now that ICE has released him, Ndiaye's petition no longer presents an injury in fact to satisfy the case-or-controversy requirement of Article III. Moreover, the terms and conditions of his release do not constitute "custody" for purposes of habeas relief.  More than anything else, the things Ndiaye complains of result from limits of smartphone technology and speculative problems that may never arise.  We dare not rest the extraordinary remedy authorized by a writ of habeas corpus on such flimsy grounds. For these reasons, I recommend that Adducci's motion to dismiss Ndiaye's habeas corpus petition be granted, and that Ndiaye's petition be dismissed with prejudice.


Dated: February 28, 2020                       s/ William H. Baughman, Jr.
                                               United States Magistrate Judge

16

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of service of this notice.  Failure to file timely objections within the specified time shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.[*]

---

[*] *See* Local Rule 72.3(b); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Am*, 474 U.S. 140 (1985).